**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| AMY KONSTANTELOS, et al., | ) | No. CV 09-6476-GHK(CW) |
| Plaintiffs, | ) ) | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| v. | ) ) | |
| PATRICIA PLOEHN, et al., | ) ) | |
| Defendants. | ) ) ) | |

        For reasons discussed below, Defendants' motion to dismiss is granted in part and denied in part, and Plaintiffs' First Amended Complaint is dismissed with leave to amend.

<u>**PROCEEDINGS**</u>

        This action was opened and the original complaint was filed on September 4, 2009, with payment of the filing fee.  [Docket no. 1.] Although Plaintiff Amy Konstantelos is an attorney and a member of the State Bar of California, the two plaintiffs are proceeding <u>pro</u> <u>se</u> in this action.   Defendants filed motions to dismiss the original complaint on September 29, 2009 (docket no. 6), and October 5, 2009 (docket no. 11).  However, Defendants withdrew these motions to

1

dismiss, and the parties stipulated to an extension of time for the filing of an amended complaint and responsive pleadings. [Docket no. 12, filed October 8, 2009; docket no. 18, filed November 6, 2009, and docket no. 20, filed December 9, 2009.]

Plaintiffs' First Amended Complaint ("FAC") was filed on December 28, 2009. [Docket no. 22.] Defendants moved to dismiss the FAC in a motion to dismiss ("MTD") filed June 13, 2010. [Docket no. 37.][1] Plaintiffs opposition ("Opp."), captioned "Memorandum in Response," was filed on July 12, 2010. [Docket no. 40.] Defendants filed a reply ("Rep.") on July 26, 2010. [Docket no. 42.] The motion to dismiss has been taken under submission and is ready for decision.

**LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a claim for relief. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). "In deciding such a motion, all material allegations of the complaint are accepted as true, as well as all reasonable inferences to be drawn from them." Id. "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" Johnson v. Riverside Healthcare System, 534 F.3d 1116, 1121 (9th Cir. 2008)(quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984)(citing 2A Moore's Federal Practice ¶ 12.08).

---

[1] An amended motion filed June 13, 2010 (as docket no. 38) appears to be simply a copy of docket no. 37 with signatures added.

2

1   Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short
2   and plain statement of the claim showing that the pleader is entitled
3   to relief."  The Supreme Court has explained the pleading requirements
4   of Rule 8(a)(2) and the requirements for surviving a Rule 12(b)(6)
5   motion to dismiss in <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937,
6   173 L. Ed. 2d 868 (2009)("<u>Iqbal</u>"), <u>Erickson v. Pardus</u>, 551 U.S. 89,
7   127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)(per curiam), and <u>Bell</u>
8   <u>Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.
9   2d 929 (2007) ("<u>Twombly</u>"); <u>see also</u> <u>Moss v. U.S. Secret Service</u>, 572
10  F.3d 962 (9th Cir. 2009).

11  The pleading standard of Rule 8 does not require "detailed
12  factual allegations."  <u>Iqbal</u>, 129 S. Ct. at 1949 (<u>quoting</u> <u>Twombly</u>, 550
13  U.S. at 555); <u>see also</u> <u>Erickson</u>, 551 U.S. at 93; <u>Moss</u>,, 572 F.3d at
14  968.  However, a complaint does not meet the pleading standard if it
15  contains merely "labels and conclusions" or "a formulaic recitation of
16  the elements of a cause of action."  <u>Iqbal</u>, 129 S. Ct. at 1949
17  (<u>quoting</u> <u>Twombly</u>, 550 U.S. at 555).

18  Instead, to comply with the requirements of Rule 8(a)(2) and
19  survive a motion to dismiss under Rule 12(b)(6), "a complaint must
20  contain sufficient factual matter, accepted as true, to 'state a claim
21  to relief that is plausible on its face.'"  <u>Iqbal</u>, 129 S. Ct. at 1949
22  (<u>quoting</u> <u>Twombly</u>, 550 U.S. at 570).  "A claim has facial plausibility
23  when the plaintiff pleads factual content that allows the court to
24  draw the reasonable inference that the defendant is liable for the
25  misconduct alleged."  <u>Iqbal</u>, 129 S. Ct. at 1949 (<u>citing</u> <u>Twombly</u>, 550
26  U.S. at 556).  This plausibility standard is not a probability
27  requirement, but does ask for more than mere possibility; if a
28  complaint pleads facts "merely consistent with" a theory of liability,

3

1  it falls short of "the line between possibility and plausibility."

2  Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

3      The Supreme Court has set out a two-pronged approach for

4  reviewing possible failure to state a claim.  Iqbal, 129 S. Ct. at

5  1949-50; see also Moss, 572 F.3d at 969-70.  First, the reviewing

6  court may identify those statements in a complaint that are actually

7  conclusions, even if presented as factual allegations.  Iqbal, 129 S.

8  Ct. at 1949-50.  Such conclusory statements (unlike proper factual

9  allegations) are not entitled to a presumption of truth.  Id.  In this

10 context it is the conclusory nature of the statements (rather than any

11 fanciful or nonsensical nature) "that disentitles them to the

12 presumption of truth."  Id. at 1951.  Second, the reviewing court

13 presumes the truth of any remaining "well-pleaded factual

14 allegations," and determines whether these factual allegations and

15 reasonable inferences from them plausibly support a claim for relief.

16 Id. at 1950; see also Moss, 572 F.3d at 969-70.

17      If the court finds that a complaint should be dismissed for

18 failure to state a claim, the court has discretion to dismiss with or

19 without leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th

20 Cir. 2000)(en banc).  Leave to amend should be granted if it appears

21 possible that the defects in the complaint could be corrected,

22 especially if the plaintiff is pro se.  Id. at 1130-31; see also Cato

23 v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).  However, if,

24 after careful consideration, it is clear that a complaint cannot be

25 cured by amendment, the court may dismiss without leave to amend.

26 Cato, 70 F.3d at 1107-11; see also Moss, 572 F.3d at 972.

27

28

4

**DEFENDANTS**

Plaintiffs' original Complaint named eight defendants: Los Angeles County, its Department of Children and Family Services ("DCFS"), Patricia Ploehn, County Supervisor Michael Antonovich, Norm Hickling, Los Angeles County Sheriff's Department ("LACSD"), County Sheriff Leroy Baca, and William McGowan. [Docket no. 1.] Apparently all eight were named on the summons, and were served. Plaintiffs have entered default against Defendant McGowan, who has not appeared. [Docket nos. 15, 16.] The other seven original defendants have appeared, and have joined in the pending motion to dismiss.

In the FAC, Plaintiffs name twelve defendants: Patricia Ploehn, Edward Flores, Laura Miller, Chychy Ekochah, Jimi Corona, Rick Bryant, Preston Oppenheimer, Norm Hickling, Pam Dawson, Alex Anderson, Sheriff Baca, and William McGowan. [FAC pp. 1–5.] The FAC omitted, and thereby effectively dismissed, four of the original defendants, namely: Los Angeles County, the DCFS, the LACSD, and Supervisor Antonovich. [See Minute Order filed February 2, 2011, docket no. 48.] Four of the defendants newly named in the FAC have not been timely served, have not appeared, and have been ordered stricken, namely: Defendants Flores, Ekochah, Dawson, and Anderson. [See Minute Order filed February 7, 2011, docket no. 49.]

There remain eight defendants, including defaulting Defendant McGowan and seven defendants who have joined in the pending motion to dismiss, namely: Defendants Ploehn, Hickling, Baca, Miller, Corona, Bryant, and Oppenheimer. Plaintiffs have named Defendant Baca in an official capacity only, Defendant McGowan in an individual capacity only, and the other movant Defendants in both official and individual capacities. [FAC pp. 3–5.] Plaintiffs seek monetary damages under 42

1  U.S.C. § 1983, for violations of federal civil rights, and under
2  California law for state tort claims.  [FAC pp. 20 and _passim_.]
3  Plaintiffs set forth their claims in the form of four "counts."

**ALLEGATIONS**

5      Plaintiffs Mrs. Amy Konstantelos and Mr. Eric Konstantelos make
6  the following allegations in the FAC.  Plaintiffs suffered ongoing
7  harassment from Defendant William McGowan, a convicted felon and
8  probationer, who had been ordered by a court to stay away from the
9  Konstantelos family.  [FAC p. 5.]  On July 28, 2008, Plaintiffs met
10 with Defendant Norm Hickling, Field Deputy for County Supervisor
11 Antonovich, complained about the harassment by Defendant McGowan, and
12 told Defendant Hickling that they believed Defendant McGowan was being
13 protected by the Sheriff's Department and the Probation Department.
14 [FAC p. 5.]  Defendant Hickling assured Plaintiffs that he took their
15 complaints seriously and would investigate the matter.  [FAC p. 6.]
16 For some two months, Defendant Hickling repeatedly assured Plaintiffs
17 that their complaints were being investigated.  [FAC p. 6.]

18      Plaintiffs allege that, on July 28, 2008, they returned home to
19 find Defendant McGowan vandalizing their property.  [FAC p. 6.]
20 Defendant McGowan revealed that he knew Plaintiffs had been to the
21 Supervisor's office, and had also gone to a Sheriff's office and had
22 talked to the FBI.  [FAC p. 6.]  Defendant McGowan stated that he was
23 an informant, that the sheriffs would do nothing to stop him, and
24 would not help Plaintiffs in their complaints against him.  [FAC p.
25 7.]  Plaintiffs informed Defendant Hickling of this.  [FAC p. 7.]

26      Mrs. Konstantelos made a series of complaints to the Sheriff's
27 Department about Defendant McGowan and the behavior of sheriff's
28 officers on August 7, August 11, and August 12, 2008.  [FAC p. 7.]  On

6

August 21, 2008, Mrs. Konstantelos filed six tort claims against Los Angeles County regarding actions by county employees in this matter. [FAC p. 8.]  Plaintiffs disclosed all of these complaints to Defendant Hickling, who mislead Plaintiffs by urging them to trust the Sheriff's Department and cooperate with its investigation.  [FAC p. 8.]

Plaintiffs allege that, on or about August 25, 2008, Defendant Hickling called the DCFS Child Abuse Hotline and maliciously made false allegations of child abuse and neglect against Plaintiffs, stating that Mrs. Konstantelos was mentally ill and that Plaintiffs' children were afraid.  [FAC pp. 8-9.]  Plaintiffs allege that Defendant Hickling did this in an attempt to shield Los Angeles County from potential liability on Plaintiffs' claims.  [FAC pp. 8-9.]  After this, Defendant Hickling continued to assure Plaintiffs that they could trust him to help them, but meanwhile he was directing DCFS workers Ed Flores and Defendant Laura Miller to contact sheriff's deputies Defendant Hickling had conspired with and who, without any basis, verified the false information Defendant Hickling had given DCFS.  [FAC p. 9.]  Defendant Sheriff Leroy Baca was made personally aware of the deputies' actions by Plaintiffs, and allowed them to continue.  [FAC pp. 9-10.]

Plaintiffs allege that they offered evidence to Mr. Flores and Defendant Miller, who refused to view it.  Mr. Flores and Defendant Miller knew there were no actual incidents of child abuse, but conspired with Defendant Hickling and Sheriff's deputies in order to discredit Plaintiffs and their complaints and tort claims.  [FAC pp. 10-11.]  Defendant Sheriff Baca had direct knowledge of the actions of the deputies, condoned their actions, and refused to stop them.  [FAC p. 11.]

7

1    Plaintiffs claim, under their "Count I," that the acts alleged
2    above (FAC pp. 5-11) amounted to intentional violations of their
3    rights under the First and Fourteenth Amendments.  [FAC pp. 5, 11.]
4        Plaintiffs further allege that, on September 5, 2008, two social
5    workers with the DCFS, Edward Flores and Defendant Laura Miller,
6    pulled Plaintiffs' son Adrian out of his elementary school classroom
7    and interrogated him without Plaintiffs' knowledge or consent.  [FAC
8    p. 11.]  Mr. Flores and Defendant Miller did not verify any
9    allegations in Defendant Hickling's complaint to the DCFS before
10   taking this action.  [FAC p. 12.]  Plaintiffs learned of this from
11   another parent, and came to the school and demanded to see Adrian.
12   [FAC p. 12.]  They were not allowed to do so before the two DCFS
13   workers finished their interrogation.  [FAC p. 12.]  Plaintiffs then
14   took Adrian and his twin brother Nicholas home, but left their older
15   son Alexander in school after informing school officials that they did
16   not give the DCFS workers permission to interview Alexander without
17   their knowledge or consent.  [FAC p. 12.]  Nevertheless, after
18   Plaintiffs left, Mr. Flores and Defendant Miller did interview
19   Alexander, despite being informed that Plaintiffs had not consented to
20   this.  [FAC pp. 12-13.]
21       Plaintiffs allege that the two DCFS workers chose to act as
22   alleged in order to bypass Fourth Amendment requirements, and to
23   harass and intimidate Plaintiffs with respect to Plaintiffs' claims
24   against the county.  [FAC p. 13.]  Plaintiffs claim, under "Count II,"
25   that the actions alleged above (FAC pp. 11-13) violated their rights
26   under the First, Fourth, and Fourteenth Amendments.  [FAC p. 11.]
27       Plaintiffs further allege that, on or about December 24, 2008,
28   Defendant McGowan, made a second false complaint about the

8

Konstantelos family to the DCFS child abuse hotline, claiming that a child was allowed to play outside at night unattended.  [FAC p. 13.] Defendant McGowan was told to do this by unnamed sheriff's deputies. [FAC 13.]  On or about December 26, 2008, DCFS Social Worker Chychy Ekochah was assigned to investigate this complaint.  [FAC p. 13.] Although Ms. Ekochah knew that such reports by neighbors are often false, and although she was aware that Plaintiffs had claimed that Defendant McGowan had harassed their family, Ms. Ekochah, with the approval of two supervisors, Defendants Rick Bryant and Preston Oppenheimer, came to Plaintiffs' home on December 26, 2009, to investigate.  [FAC pp. 13-14.]  Ms. Ekochah did not make contact with Plaintiffs' family, but, in her report, she described Plaintiffs' home as a "compound" with a "'mighty' cross and a carving of a dog."  [FAC p. 14.]  Ms. Ekochah described Plaintiffs to her colleagues as "white supremacists" and "wackos."  [FAC p. 14.]

     Another DCFS social worker, Amy Maughan, was asked to visit Plaintiffs' family on December 31, 2008.  [FACT p. 14.]  Ms. Maughan spent several hours with the family, determined that the "mighty cross" was actually an electrical pole, found no signs of abuse or neglect, and informed Plaintiffs that she would close out the case. [FAC p. 14.]  When Ms. Maughan returned to her office she found other employees waiting to discuss the case, repeating the references to "wackos" and "white supremacists," and was told by her supervisors, Defendants Bryant and Oppenheimer, that she would not be permitted to close the case.  [FAC p. 15.]  Ms. Maughan told Plaintiffs that she was disturbed by the manner in which her office was treating the case, and that she was asking to be removed from the case immediately because she had health problems and was going out on disability.  [FAC

p. 15.]

At this time Plaintiffs had already complained to the DCFS and the County Counsel about the prior incident at their children's school, and had made public records requests in anticipation of potential legal action. [FAC p. 15.] Plaintiffs allege that DCFS Director Defendant Patricia Ploehn, Defendants Bryant and Oppenheimer, and Ms. Ekochah all knew about this, and kept the DCFS case pending in order to harass and silence Plaintiffs. [FAC pp. 15, 17.] Plaintiffs make additional allegations indicating that Ms. Maughan supported their position and opposed the continuing investigation. [FAC pp. 15-16.]

Plaintiffs further allege that DCFS next assigned the case to social worker Patty Woods. [FAC p. 17.] Ms. Woods conferred with Ms. Maughan and was inclined to follow her recommendation that the case be closed, but was informed that the case was being transferred to the sensitive case unit. [FAC p. 17.] Instead, the case was transferred to Defendant Jimi Corona, a social worker in another DCFS officer but not in the sensitive case unit. [FAC p. 17.] Defendant Corona continued the investigation, and attempted to interrogate Plaintiffs' children at their elementary school, with the encouragement of Sheriff's Deputy Pam Dawson, and in order to bypass Plaintiffs' Fourth Amendment Rights. [FAC pp. 17-18.] Defendant Baca was aware of and condoned the actions of Deputy Dawson. [FAC p. 18.] The attempt to interrogate the children failed because Plaintiffs had taken them out of that school. [FAC p. 18.]

Plaintiffs claim, under "Count III," that the actions alleged above (FAC pp. 13-18) were undertaken to frighten and intimidate them into silence and violated their rights under the First and Fourth

1   Amendments.  [FAC p. 13.]

2       Finally, Plaintiffs claim that the above allegations also support

3   tort claims under California law, specifically that Defendant Hickling

4   acted with specific intent to harm Plaintiffs when he made a false

5   report to the DCFS, and that Defendants Ploehn, Miller, Corona,

6   Bryant, and Oppenheimer acted with either intent to harm or at least

7   negligence in the manner in which the DCFS conducted the

8   investigations described above.  [FAC pp. 14-15.]  Plaintiff Eric

9   Konstantelos filed a tort claim with Los Angeles County concerning

10  these allegations.  [FAC p. 15.]

11                    **OFFICIAL CAPACITY DEFENDANTS**

12      As noted above, Plaintiffs name Defendant Baca in an official

13  capacity only, and name the other movant Defendants in both official

14  and individual capacities.  However, Plaintiffs' allegations do not

15  support official capacity claims against any named defendants.

16      To begin with, Plaintiffs appear to have misunderstood the

17  distinction between individual and official capacity defendants.  A

18  person sued based on specific allegations of actions done or not done

19  by that person as an individual is being sued in an "individual

20  capacity," even if that individual happens to be a government officer

21  or official, or a supervisor over other defendants.  On the other

22  hand, a person sued based simply on the office held by that person,

23  and not on any allegations of individual acts or omissions, is being

24  sued in an "official capacity."  A person sued in an official capacity

25  is an officer with the capacity to represent and act in the name of a

26  governmental entity, and suing an official capacity person is legally

27  equivalent to suing the governmental entity.  If an official capacity

28  defendant ceases to hold that office and is replaced by a new office

                                    11

holder, that new official may be substituted as the official capacity

defendant.[2]   On this distinction between official and individual (or

personal) capacity, see, e.g., Hafer v. Melo, 502 U.S. 21, 112 S. Ct.

358, 116 L. Ed. 2d 301 (1991); Kentucky v. Graham, 473 U.S. 159, 105

S. Ct. 3099, 87 L. Ed. 2d 114 (1985).

In this light, based on Plaintiffs' identification of the

Defendants (FAC pp. 3-5) and the allegations in the body of the FAC,

County Sheriff Baca and DCFS Director Ploehn are the only defendants

who could be named in an official capacity, and any purported official

capacity claims against other named defendants should be dismissed.

On the other hand, Plaintiffs' allegations do not actually

support civil rights claims against Defendants Baca and Ploehn in

their official capacities.  As noted above, a claim against an

official capacity defendant is legally equivalent to a claim against a

governmental entity, and in this case the entity in question is a

municipal one, namely the Los Angeles County Sheriff's Department and

the Los Angeles County Department of Children and Family Services.

However, municipal agencies are not liable on § 1983 claims on a

theory of respondeat superior, simply as the employers of defendants

named in an individual capacity.   See Monell v. New York City Dep't of

Social Services, 436 U.S. 658, 98 S. Ct. 2018, 50 L. Ed. 2d 61 (1978).

To establish municipal liability on a civil rights damages claim, a

plaintiff must show that the alleged constitutional deprivation was

---

[2]   For example, in a habeas corpus petition by a prisoner, the
prison warden is normally named as respondent (i.e., defendant), not
based on any actions by that warden, but because the warden is the
custodial officer with the capacity to order the petitioner released.
If the warden is replaced, or the prisoner is transferred to another
prison, the new warden may be substituted as respondent.

caused by a policy or custom of the municipal agency.  <u>Monell</u>, 436
U.S. at 690-91; <u>see also</u> <u>Board of County Com'rs of Bryan County v.</u>
<u>Brown</u>, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997);
<u>Ulrich v. City & County of San Francisco</u>, 308 F.3d 968, 984 (9th Cir.
2002).  However, Plaintiffs have not specifically asserted <u>Monell</u>
claims, and the factual allegations in the FAC do not support <u>Monell</u>
claims.

Accordingly, Plaintiffs' claims against official capacity
Defendants Baca and Ploehn should be dismissed.  Possible individual
capacity claims against these defendants are discussed below.

**PLAINTIFFS' LEGAL CLAIMS**

As noted above, in the FAC, Plaintiffs set forth their claims in
the form of four "counts," consisting of three counts of civil rights
violations under 42 U.S.C. § 1983, and one count under state tort law.
The elements of a claim under § 1983, are that a person, acting under
color of state law, deprived a plaintiff of a right under the federal
constitution or laws.  See <u>Miranda v. Clark County</u>, 279 F.3d 1102,
1106 (9th Cir. 2002)(<u>citing</u> <u>West v. Atkins</u>, 487 U.S. 42, 48-49, 108 S.
Ct. 2250, 101 L. Ed. 2d 40 (1988)).

**COUNT ONE**

In Count One, Plaintiffs assert violations of their rights under
the First and Fourteenth Amendments, and appear to name Defendants
McGowan, Hickling, Miller, and Baca (as well as stricken Defendants
Flores and Anderson).  [FAC pp. 5-11.]  Here, Plaintiffs' fundamental
allegation is that Defendant Hickling filed a false report against
them with the DCFS.  As described above, Plaintiffs also allege that
Defendant Hickling conspired with Defendant McGowan, Defendant Miller,
and others in connection with this false report, and that Defendant

1   Baca was informed of the actions of his deputies by Plaintiffs and
2   allowed the constitutional violations to continue.

3        As a § 1983, claim Count I is subject to dismissal on several
4   grounds.  First, insofar as Plaintiffs may intend to assert an
5   individual capacity claim against Sheriff Baca as a supervisor, their
6   allegations do not support such a claim.  To sustain a § 1983 claim
7   for individual liability, a plaintiff must establish the "personal
8   involvement" of each defendant, including supervisors, in a
9   constitutional deprivation or a "causal connection" between each
10  defendant's wrongful conduct and the deprivation.  See Hansen v.
11  Black, 885 F.2d 642, 646 (9th Cir. 1989); see also Iqbal, 129 S. Ct.
12  at 1948 (supervisory personnel not individually liable under § 1983 on
13  theory of respondeat superior); Jones v. Williams, 297 F.3d 930, 934
14  (9th Cir. 2002)(must show personal participation in alleged rights
15  deprivations; no respondeat superior liability)(citing, inter alia,
16  Monell, 436 U.S. at 690).  In narrow circumstances, supervisors can be
17  held liable for the actions of their subordinates (1) for setting in
18  motion a series of acts by others, or knowingly refusing to terminate
19  a series of acts by others, which they knew or reasonably should have
20  known would cause others to inflict constitutional injury; (2) for
21  culpable action or inaction in training, supervision, or control of
22  subordinates; (3) for acquiescence in a constitutional deprivation by
23  subordinates; or (4) for conduct that shows a "reckless or callous
24  indifference to the rights of others."  Al-Kidd v. Ashcroft, 580 F.3d
25  949, 965 (9th Cir. 2009).  Even so, "purpose rather than knowledge" is
26  required to impose liability on a supervisor for discharging
27  responsibilities in a way that may have resulted in constitutional
28  deprivations.  See Iqbal, 129 S. Ct. at 1949 (rejecting claim that

                                  14

supervisor's mere knowledge of subordinate's discriminatory purpose amounts to constitutional violation by supervisor).  Here, Plaintiffs allegations might show knowledge on the part of Defendant Baca, but they do not show purpose, let alone any personal involvement by the Sheriff in the alleged constitutional violations.

A more general defect in Count I is that Plaintiffs do not articulate the specific constitutional violation they are asserting. Thus, Plaintiffs have not identified a specific right protected by the First Amendment, and have not made clear whether they are also asserting a claim under a specific provision of the Fourteenth Amendment or are simply referring to the Due Process Clause of the Fourteenth Amendment as incorporating the First Amendment with respect to the states.

On the other hand, Plaintiffs may well be able to amend Count I to state a First Amendment retaliation claim against Defendant Hickling if they can make factual allegations, under the Iqbal standard, showing that Defendant Hickling made a false report against Plaintiffs to the DCFS in order to retaliate against them for exercising their First Amendment right to petition for redress of grievances and to chill their exercise of that right.[3]

Plaintiffs may also be able to state a claim against Defendant Miller for conspiring with Defendant Hickling in retaliating against Plaintiffs if Plaintiffs can provide factual allegations sufficient

---

[3]  Defendants contend that Defendant Hickling has immunity for reports to the DCFS as a "mandated reporter."  Plaintiffs contend, reasonably, that Defendant Hickling, a political employee of a county supervisor is not a "mandated reporter."  If Plaintiffs file another amended complaint they may explain therein why Defendant Hickling is not entitled to immunity, and this issue may then be clarified.

under <u>Iqbal</u> to show a conspiracy.  In order to state a claim against

Defendant McGowan on Count I, or any of Plaintiff's federal civil

rights claims, they must show how Defendant McGowan, a private person,

was acting under color of state law under § 1983.  <u>See</u>, <u>e.g.</u>, <u>Price v.</u>

<u>Hawaii</u>, 939 F.2d 702, 202-08 (9th Cir. 1991)(generally private parties

are not acting under color of state law).

     Accordingly, Plaintiffs' Count I is subject to dismissal for

failure to state a claim, but may be successfully amended as discussed

above.

### COUNT TWO

     In Count Two, Plaintiffs assert violations of their rights under

the First, Fourth, and Fourteenth Amendments, and appear to name only

Defendant Miller (and stricken Defendant Flores).  [FAC pp. 11-13.]

Here, Plaintiffs' fundamental allegation is that Defendant Miller

(along with Mr. Flores), in the course of investigating Defendant

Hickling's report, interrogated two of Plaintiffs' children at their

elementary school without Plaintiffs' knowledge or consent.  As with

Count I, Plaintiffs have not explained whether they are also asserting

a claim under a specific provision of the Fourteenth Amendment, or are

simply referring to the Fourteenth Amendment as incorporating the

First and Fourth Amendments with respect to the states.  Furthermore,

Plaintiffs have not made clear how the alleged actions violated the

Fourth Amendment rights of Plaintiffs, and it is not clear to the

court how they might be able to do so.[4]

     On the other hand, Plaintiffs might be able, on amendment, to

_____

     [4]  As Defendants note, a claim that the children's Fourth
Amendment Rights were violated would be ruled out here because the
children are not parties to this action.

state a First Amendment retaliation claim, if they can provide factual
allegations sufficient under _Iqbal_ to show that Defendant Miller, in
interrogating the children, acted specifically at that time to
retaliate against Plaintiffs' prior exercise of their First Amendment
rights or to chill their future exercise of those rights.

**COUNT THREE**

In Count Three, Plaintiffs assert violations of their rights
under the First and Fourth Amendments, and appear to name Defendants
McGowan, Bryant, Oppenheimer, Ploehn, Corona, and Baca (as well as
stricken Defendants Ekochah and Dawson).  [FAC pp. 13-18.]  Here,
Plaintiffs' fundamental allegations are that Defendant McGowan made a
second false report against Plaintiffs to the DCFS; that Ms. Ekochah
began an investigation and made a false report about Plaintiffs; that,
despite Ms. Maughan's report exonerating Plaintiffs, which Ms. Woods
appeared likely to second, Defendants Bryant and Oppenheimer refused
to close the case, but kept it open, assigning it to Defendant Corona.
Defendant Corona and Deputy Dawson tried to interrogate Plaintiffs'
children at school, but could not do so because Plaintiffs had taken
the children out of that school.  Defendant Director Ploehn knew what
the DCFS employees were doing, and Defendant Sheriff Baca knew what
Deputy Dawson was doing.  Defendants in general acted to intimidate
Plaintiffs because Plaintiffs were complaining and threatening legal
action.

Count Three suffers from some of the same defects affecting the
other counts.  Thus, for example, with respect to supervisory
Defendants Ploehn and Baca Plaintiffs' allegations do not show purpose
rather than merely knowledge, as discussed with respect to Sheriff
Baca under Count I.  Again, Plaintiffs do not show how Defendant

17

1    McGowan was acting under color of law for § 1983 purposes.

2         As with Count II, Plaintiffs have not shown how interrogating the
3    children would violated Plaintiffs' Fourth Amendment rights.
4    Furthermore, as Defendants point out, Defendant Corona and Deputy
5    Dawson were not able to interrogate the children.  It does not appear
6    that Defendant Corona in particular was able to do any harm to
7    Plaintiffs.

8         With respect to the First Amendment claim, as in Count I,
9    Plaintiffs have not articulated a specific claim under the First
10   Amendment.  On amendment, they may be able to state a First Amendment
11   retaliation claim against Defendants Bryant and Oppenheimer, if they
12   can provide factual allegations sufficient, under <u>Iqbal</u>, to show that
13   these defendants continued a meritless DCFS investigation in order to
14   retaliate against Plaintiffs and intimidate them in the exercise of
15   their First Amendment right to petition for redress.

16                              **<u>COUNT FOUR</u>**

17        In Count Four, Plaintiffs refer generally to all the allegations
18   made under the first three counts, and claim that they support state
19   law tort claims, apparently against Defendants Hickling, Ploehn,
20   Corona, Bryant, and Oppenheimer (and stricken defendants Anderson,
21   Ekochah, Flores, and Dawson).  [FAC pp. 18-20.]  Plaintiffs allege,
22   without giving a detailed account, that Plaintiff Eric Konstantelos
23   filed a tort claim with Los Angeles County against these defendants.
24   [FAC p. 19.]  Here, Plaintiffs have failed either to articulate
25   <u>specific</u> tort claims (although they refer briefly to "intentional
26   tort" and "negligence"), or to provide factual allegations connecting
27   specific Defendants with specific claims.

28        In the FAC Plaintiffs did not satisfy Fed. R. Civ. P. 8(a)(1) by

                                    18

providing a short and plain statement of the court's jurisdiction over their state law claims. If Plaintiffs are able to successfully amend so as to state at least one cognizable § 1983 claim, they could invoke the court's supplemental jurisdiction over related state law claims. See 18 U.S.C. § 1367. If all claims under federal law are dismissed, the court may dismiss any remaining state law claims under 18 U.S.C. § 1367(c)(3).

If Plaintiffs do amend and wish to include supplemental state law claims, they must comply, in their pleading, with all of the requirements of Fed. R. Civ. P 8(a), and must show how they have complied with the requirements of the California Tort Claims Act.[5]

### CONCLUSIONS

In conclusion, Plaintiffs First Amended Complaint is subject to dismissal for failure to state a claim with respect to each of Plaintiff's four "counts." It appears highly unlikely that Plaintiffs could successfully amend to state a Fourth Amendment or Fourteenth Amendment claim, or to state a civil rights claim against any official capacity defendants, against private party Defendant McGowan, against Defendant Corona, or against supervisory Defendants Baca or Ploehn. On the other hand, if Plaintiffs can correct the defects discussed above, they may be able to state First Amendment retaliation claims under 42 U.S.C. § 1983 against Defendants Hickling, Miller, Bryant, and/or Oppenheimer. If they can do so, they may also be able to state cognizable supplemental claims under state tort law. They will be given leave to make the attempt.

---

[5]   Although Defendants contend that Count IV is barred because only Mr. Konstantelos filed a claim, they do not explain why, even so, Count IV could not be brought by one plaintiff only.

**ORDERS:**

It is therefore **ORDERED** as follows:

1.    Defendants' motion to dismiss (docket nos. 37 and 38, filed June 13, 2010) is **GRANTED IN PART AND DENIED IN PART**.  The motion is denied as moot as to already dismissed Defendants Los Angeles County, Department of Children and Family Services, Los Angeles County Sheriff's Department, and Michael Antonovich.  The motion is granted as to all other movant Defendants as discussed above.

2.    The First Amended Complaint (docket no. 1, filed September 4, 2009) is **DISMISSED WITH LEAVE TO AMEND**.

3.    Within thirty (30) days of the filing date of this Memorandum and Order, Plaintiffs may file a second amended complaint which corrects the defects discussed above and complies with the following requirements:

(a)  The "Second Amended Complaint" must bear the present case number "CV 09-6476-GHK(CW)."

(b)  It must be complete in itself and may not incorporate by reference any part of any prior complaint.

(c)  Plaintiffs may not use "et al." in the caption, but must name themselves and each Defendant against whom claims are stated in the Second Amended Complaint.  (The clerk uses the caption to make sure that the parties are correctly listed on the docket.)

(d)  Plaintiffs may not add new parties without leave of the court.

4.    If Plaintiffs file a second amended complaint, the court will issue further orders as appropriate; if not, the magistrate judge will recommend that this action be dismissed, without prejudice, for failure to prosecute and/or failure to comply with court orders, as well as for the reasons stated above.

20

1        5.    The clerk shall serve this Memorandum and Order on the

2   parties.

3

4

5   DATED:   February 11, 2011

6

7   _____

8            CARLA M. WOEHRLE
    United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28